IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| TERRAL ALEXANDER, | ) | Civil Action No. 3:12-2631-RMG-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| CAROLYN W. COLVIN,[1] ACTING | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| —————————————— | ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff protectively filed applications for DIB and SSI on September 9, 2005, alleging disability beginning on September 21, 2004. Tr. 105, 153; see Civil Action No. 3:09-01992-RMG-JRM. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on July 15, 2008, at which Plaintiff and a vocational expert ("VE") appeared and testified. The ALJ issued a decision on December 4, 2008, finding Plaintiff was not disabled because there was work that existed in the national economy

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this lawsuit.

which Plaintiff could perform. The Appeals Council denied the request for review in a decision issued June 17, 2009 (Tr. 1-7), and the ALJ's decision became the final decision of the Commissioner. Plaintiff then filed an action in United States District Court. See Civil Action No. 3:09-01992-RMG-JRM.

The undersigned issued a Report and Recommendation on August 30, 2010, recommending that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and the case be remanded to the Commissioner for further administrative action. On September 29, 2010, the Honorable Richard M. Gergel, United States District Judge, issued an order adopting the Report and Recommendation, and the case was remanded to the Commissioner.

After remand, Plaintiff amended his alleged onset date of disability to May 15, 2006. Tr. 746. A hearing was held on May 17, 2011 at which Plaintiff, a medical expert ("ME"), and a VE appeared and testified. Tr. 537-586. The ALJ issued a decision on August 16, 2011, finding Plaintiff was not disabled because the ALJ concluded that work exists in the national economy which Plaintiff can do.

Plaintiff was forty-seven years old at the time he was last insured for DIB. He received his GED and has past relevant work as a machine operator. Tr. 25, 159. Plaintiff alleges that he became disabled due to back problems, nerve damage, dizziness, and depression. Tr. 158.

The ALJ found (Tr. 517-529):

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2.  The claimant has not engaged in substantial gainful activity since May 15, 2006, the amended alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3.  The claimant has the following severe combination of impairments: degenerative disc disease, obesity, depression, and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

2

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). I specifically find that he can lift and/or carry no more than 10 pounds on an occasional basis and less than 10 pounds on a frequent basis, he can sit for 6 hours out of an 8-hour workday and he can stand/walk for 2 hours out of an 8-hour workday. The claimant cannot crawl or climb ladders, ropes or scaffolds. All other postural activities are limited to occasional. The claimant has moderate mental limitations but can still concentrate, persist, and pace to perform simple, routine, repetitive tasks at level 3 reasoning per the Dictionary of Occupational Titles for up to 2 hour periods. The claimant can occasionally interact with the public at non-production type work. The claimant has the capacity to interact appropriately with coworkers and supervisors in a stable, routine setting.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on [] and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from May 16, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

3

## STANDARD OF REVIEW

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

## MEDICAL EVIDENCE

Plaintiff sustained injuries in a car accident in September 2004. His primary care provider, Henry Ramirez, a physician's assistant ("PA") at Oconee Family Practice, diagnosed Plaintiff with cervical whiplash, lumbar strain, and abdominal contusion. Tr. 311. X-rays of Plaintiff's cervical and thoracic spine were normal. Tr. 310. PA Ramirez prescribed an injection of Decadron-LA, continuation of Flexeril, and physical therapy on September 27, 2004. A note for Plaintiff to remain out of work for a week was provided. Tr. 311. This work release was extended, as Plaintiff was found to not be fully recovered at follow-up appointments in September and October 2004. Treatment included steroid injections, Darvocet, and physical therapy. Tr. 312.

Plaintiff reported feeling much better on October 27, 2004, and PA Ramirez released Plaintiff to full-duty work as of November 1, 2004. Tr. 314. On November 2, 2004, Plaintiff complained of persisting back pain. PA Ramirez noted that Plaintiff had lower back tenderness and extended the work release until December 1, 2004. Tr. 314. During physical therapy sessions from October to

December 2004, Plaintiff continued to report improvement in his back condition. Tr. 240-254. On December 1, 2004, Plaintiff reported feeling better, PA Ramirez noted that Plaintiff's back strain was resolved, and Plaintiff was released to full duty work. Tr. 314.

Plaintiff returned to work, but complained to PA Ramirez of persistent back pain with radiation into his legs on December 20, 2004. Upon examination, PA Ramirez noted increased muscle tenderness in Plaintiff's back and positive straight leg raise testing (indicating a likely herniated disc). PA Ramirez diagnosed Plaintiff with resolved neck muscle spasms and thoracic and lumbar strains. He prescribed Relafen (a non-steroidal anti-inflammatory medication), Soma (a muscle relaxant), and Ultram and Lortab (narcotic pain medications). PA Ramirez scheduled an MRI of Plaintiff's back and provided a note releasing Plaintiff from work until January 4, 2005. Tr. 313. An MRI of Plaintiff's lower back the same day revealed a disc protrusion likely contacting the nerve root, with no spinal stenosis or other evident neural compromise. Tr. 322. An MRI of Plaintiff's upper back was unremarkable on December 29, 2004. Tr. 324.

Dr. Daxis Banit, an orthopaedist, began treating Plaintiff in January 2005. Dr. Banit's impressions included knee contusion with crepitation on motion, disc protrusion in Plaintiff's lower back with no associated radicular findings, some degenerative changes in Plaintiff's lower back and neck, and shoulder contusion with mild loss of internal rotation consistent with tendinitis of the rotator cuff. Straight leg raise testing was negative. Plaintiff was referred for epidural injections and his pain medications were renewed. Dr. Banit wrote that Plaintiff would be kept out of work "for the time being." Tr. 277.

Dr. John Martin, a physician at the Pain Clinic at Oconee Memorial Hospital, administered an epidural steroid injection on January 17, 2005. Plaintiff reported that his pain was ten on a scale

5

of one to ten and Darvocet was the only thing that gave him pain relief. Dr. Martin noted that Plaintiff was in no acute distress, had moderate tenderness in his back on palpation, had full range of motion in his back with some pain on motion, and was able to ambulate with a normal gait. Tr. 270-271.

On February 11, 2005, Plaintiff told Dr. Banit that he would like to return to work in the next few weeks. Dr. Banit thought that Plaintiff should continue therapy and try to get back to work in early March. Tr. 275. On February 17, 2005, Plaintiff reported to Dr. Martin that the epidural provided two days of excellent pain relief, but the pain returned thereafter. He stated that Darvocet continued to provide adequate pain relief. Another injection was administered. Tr. 267-268. A third epidural injection was given on March 11, 2005. Tr. 265. On April 8, 2005, Plaintiff reported to Dr. Banit that he was having difficulty at work with significant levels of back pain. Tr. 274. Following a discogram in April 2005, Dr. Banit opined that none of the findings indicated a need for surgery. He said that Plaintiff was relegated to pain management and referred Plaintiff back to PA Ramirez for follow-up. Tr. 272.

In May 2005, Plaintiff experienced an episode of extreme confusion followed by continued confusion and short-term memory loss. He was initially treated at a North Carolina emergency room after being found wet and confused at a convenience store. A CT scan was normal. Tr. 281-290. On May 12, 2005, Plaintiff was admitted to Oconee Memorial Hospital after he continued to have confusion and impaired concentration and attention. Tr. 293. An MRI and an EEG were normal. Tr. 323, 334. Plaintiff reported that he might have taken an overdose of his medications (Darvocet and Xanax). He was discharged against medical advice the next day and directed to follow up with his primary care provider. Tr. 293-294.

On May 16, 2005, PA Ramirez noted that Plaintiff had normal intellect and memory with no neurological symptoms, but with moderate, sporadic memory disturbance. He scheduled an MRI and referred Plaintiff to a neurologist. Tr. 315. The MRI was negative. Tr. 309. On May 21, 2005, PA Ramirez assessed that Plaintiff had a moderate concussion and two episodes of altered mental state. Tr. 318.

Plaintiff was treated by Dr. Jerry Sherrill, a neurologist, in May and June 2005. Tr. 326-329. At his initial visit, Plaintiff was alert and oriented, but had anxiety and poor recall. Dr. Sherrill diagnosed Plaintiff with an "unusual episode of poor memory and amnesia" and ordered an EEG, polysomnograph (sleep study), and blood testing. Tr. 329. In May, Plaintiff reported he was doing well with no return of symptoms. The EEG and laboratory results were negative. Dr. Sherrill diagnosed Plaintiff with an episode of amnesia probably due to stress, fugue state, and minor head trauma which seemed to all have resolved. He indicated that if the polysomnograph was negative, Plaintiff would be released back to his primary care provider. Tr. 326-327. The polysomnograph showed mild obstructive sleep apnea. Tr. 333.

Dr. Spurgeon Cole, Ph.D., a psychologist, examined Plaintiff on October 31, 2005 at the request of the Commissioner. Dr. Cole noted that Plaintiff's mental status was somewhat confused, with concentration problems and poor attention span. He described Plaintiff's behavior as inappropriate and child-like. Dr. Cole opined that "at the present time, I do not think [Plaintiff] is able to concentrate well enough to complete a task in a timely manner." He also thought that Plaintiff should not interact with the public. Tr. 340-343.

On November 17, 2005, Plaintiff was seen by PA Ramirez for a check-up and medication refill. He reported that he had a severe backache. PA Ramirez noted that Plaintiff's back was tender

to palpation, assessed degenerative disc disease, and renewed Plaintiff's Darvocet. Tr. 375. On a form completed November 18, 2005, PA Ramirez indicated that Plaintiff's thought processes were intact, his thought content was appropriate, and his concentration and memory were adequate. He also indicated that Plaintiff's mood was worried and anxious. Tr. 353. On December 6, 2005, PA Ramirez noted that Plaintiff had normal intellect and memory with no neurological symptoms. Plaintiff's back problems were evaluated and noted to be stable. Tr. 373.

Dr. Carl Anderson, a state agency physician, reviewed the medical evidence in November 2005 and opined that Plaintiff had no exertional limitations on his ability to perform work-related tasks.  He indicated, however, that Plaintiff should avoid hazards and only occasionally climb ladders, ropes, and scaffolds. Tr. 345-351.

Dr. Renuka Harper, a state agency psychologist, reviewed the evidence and opined in December 2005 that Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions; perform activities within a schedule; interact appropriately with the general public; and set realistic goals.  She indicated that Plaintiff was not significantly limited in the other areas of functioning. Dr. Harper opined that Plaintiff could remember location and work-like procedures; understand, remember, and carry out short and simple instructions; attend to and perform simple tasks without special supervision for at least 2-hour periods; understand normal work-hour requirements and be prompt within reasonable limits; work in proximity to others without being unduly distracted; make simple work-related decisions; and would function best in a low-stress work environment.  Dr. Harper opined that Plaintiff had moderate limitations in the three "B" criteria areas of the Listings: activities of daily living; maintaining social functioning; and maintaining

concentration, persistence, or pace. She opined that Plaintiff did not meet or equal any of the Listings of Impairments ("Listings"). Tr. 354-370.

Dr. Robbin Ronin, a state agency psychologist, opined in February 2006 that Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions; interact appropriately with the general public; and set realistic goals. Tr. 408-409. Dr. Ronin's findings were similar to Dr. Harper's, and Dr. Ronin concluded that Plaintiff had the ability to perform "simple, repetitive tasks in a low stress work environment." Tr. 408-410.

In February 2006, Dr. George Chandler, a state agency physician, reviewed Plaintiff's medical records. He opined that Plaintiff was capable of performing medium work with the limitation of only occasional stooping. Tr. 400-407.

Plaintiff's back problems were evaluated by a registered nurse at Oconee Family Practice and found to be stable on February 8, 2006. Tr. 439. On March 7, 2006, Plaintiff requested that PA Ramirez complete disability papers for him. Tr. 437. PA Ramirez opined that Plaintiff was not employable. Tr. 427-430. In August and November 2006, it was noted that Plaintiff's chronic back problems had been reevaluated and were stable. Tr. 431-432. On February 19, 2007, Plaintiff had a normal range of motion in his back with no spasm or tenderness noted. Tr. 445.

An MRI in August 2007 showed slight disc bulging in Plaintiff's neck at C5-6 and a posterior disc protrusion at C4-5 narrowing the right lateral neural foramen. Tr. 455-456. In December 2007, Plaintiff complained that he had twisted his back and was experiencing excruciating pain. PA Ramirez noted muscle spasms in Plaintiff's lower back and provided two injections of Torodol for pain relief. Tr. 468-470.

On December 19, 2007, Plaintiff sought treatment in the Oconee Memorial Hospital emergency room for pain in his knees, legs, ankles, and feet, and pain radiating from his neck down to his right hand. The pain was not accompanied by any weakness or numbness and did not worsen with movement. Neurological examination was normal and Plaintiff had normal strength and symmetric reflexes in his extremities. Plaintiff was diagnosed with right arm pain consistent with cervical radiculopathy and prescribed steroids. He was discharged home and directed to return to his primary care provider. Tr. 458-459.

Plaintiff was seen by PA Ramirez in February and March 2008 for medication refills. On March 3, 2008, PA Ramirez noted that Plaintiff had normal movement of all his extremities with normal strength, coordination, and gait. Tr. 463-466. PA Ramirez completed a "Lumbar Spine Residual Functional Capacity Questionnaire" on May 16, 2008. He opined that Plaintiff's pain and other symptoms would frequently interfere with the attention and concentration needed to perform simple work tasks. PA Ramirez also wrote that Plaintiff could walk about one city block without rest or severe pain, sit for approximately ten minutes at a time, and stand for about twenty minutes at a time. He opined that Plaintiff would need one to two breaks per hour, would need a cane while engaging in occasional standing or walking, and would miss more than four days of work per month as a result of his impairments. Tr. 474-477.

On August 20, 2008, Plaintiff saw PA Ramirez complaining of three weeks of foot pain. PA Ramirez continued Plaintiff's medications. Tr. 775-776. On October 6, 2008, Plaintiff complained of right knee pain and requested and received a steroid injection. Tr. 773. Plaintiff sought treatment at the emergency room on January 4, 2009 complaining of back pain. Plaintiff reported that his knees had given out two or three days previously, he twisted his back, and he had pain in his knees and

across his lower back into his legs. Examination of Plaintiff's right leg revealed a positive straight leg raise. The treating physician diagnosed lumbar radiculopathy and prescribed Prednisone and pain medication. Tr. 488-491, 749-750.

On February 26, 2009, Plaintiff reported to PA Ramirez two months of knee popping, pain, and swelling, and balance problems with frequent falling. Examination revealed swelling in both knees, but normal movement in all extremities. Tr. 771-772. An MRI was ordered. On April 14, 2009, Plaintiff returned complaining of neck and shoulder pain. Referral for pain management was recommended, but Plaintiff stated he did not have insurance and could not afford that treatment. Tr. 769-770.

In a visit on June 16, 2009, Plaintiff complained of low back pain after falling off his porch, an examination revealed a fluid-filled knot on his knee. It was noted Plaintiff had been walking normally since the fall. Tr. 766. At an appointment on August 19, 2009, Plaintiff complained of right arm pain and difficulty raising his arm. An injection was administered and Plaintiff was continued on his current medications. Tr. 764. On November 9, 2009 Plaintiff's wife reported that he was having seizures, and PA Ramirez recommended getting an EEG. Tr. 762.

In a March 2010 visit with PA Ramirez, Plaintiff complained of neck pain. Tr. 760. In a June 2010 visit, he reported falling down his stairs after his legs gave out. Tr. 755. Plaintiff returned to see PA Ramirez on September 14, 2010 with complaints that his Celexa did not seem to be working. Plaintiff complained of increased fatigue and anxiety. PA Ramirez increased Plaintiff's dosage of Celexa and recommended evaluation after six months. Tr. 781-782. On October 12, 2010, Plaintiff was prescribed a cane, due to severe degenerative disc disease. Tr. 780. Plaintiff requested pain medication injections for neck and back pain at visits in October and December 2010. Tr. 778, 792.

Dr. Cathy R. Hurray, a physician in the same office as PA Ramirez, evaluated Plaintiff on October 27, 2010 for continued complaints of severe low back pain, which was exacerbated by a recent fall. Dr. Hurray noted that Plaintiff's leg weakness was at its baseline, his gait was abnormal and slow, and he walked with a cane. Dr. Hurray gave Plaintiff several injections and continued his medications. Tr. 778-779. On December 8, 2010, Plaintiff complained to Dr. Hurray about neck pain and received injections. Tr. 792.

On November 5, 2010 Plaintiff went to the emergency room after hurting his toe when he tripped and fell during a shopping trip. Tr. 784-789. It was noted Plaintiff had full range of motion in all extremities except his injured foot. Tr. 785.

In February 2011, Plaintiff was prescribed a rolling walker due to weakness and falls. Tr. 810. Plaintiff visited Dr. Hurray in June 2011, for what the treatment notes described as an SSD exam. Plaintiff reported walking with a cane for several years and complained of regular tremors and dizziness. Plaintiff reported that physical therapy failed, and that he could not afford further pain management or neurological consultations. Tr. 821. Dr. Hurray noted Plaintiff had good exercise habits. Tr. 822.

On January 6, 2011 PA Ramirez completed a medical source statement form for mental functioning. PA Ramirez indicated Plaintiff could follow instructions, but could not handle normal work pressure. Tr. 793-794. In a January 13, 2011 medical source statement physical functioning assessment, Dr. Hurray opined that Plaintiff could not lift or carry any weight at all; could not sit or stand more than ten or fifteen minutes; could only walk five feet without a cane; could continuously handle, finger, and feel with his hands; and could occasionally reach overhead and push and pull. She opined that Plaintiff could occasionally balance and could never climb stairs and ramps, climb

ladders and scaffolds, stoop, kneel, crouch, or crawl. Dr. Hurray estimated that Plaintiff, on average, would miss more than four days of work a month and he would experience pain or other symptoms severe enough to interfere with concentration and attention frequently. It was noted Plaintiff's symptoms had lasted or were expected to last for twelve consecutive months. Tr. 795-797. Dr. Hurray also completed a lumbar spine functioning form on January 7, 2011. Tr. 798-801.

Also in January 2011, Dr. Yashbir Rana performed a consultative exam and functional assessment. Tr. 802-809. Dr. Rana's exam revealed neck and back range of motion limited by Plaintiff's complaints of pain. Tr. 803. Dr. Rana cited the MRIs showing mild disc bulging and protrusion to support her opinion that Plaintiff was entirely disabled. Tr. 803-809. Dr. Rana indicated that Plaintiff could sit for two hours at one time and up to four hours in an eight-hour day; could stand for thirty minutes at one time and up to one hour in an eight-hour day; and could walk for thirty minutes at one time and up to one hour in an eight-hour day. Dr. Rana indicated that Plaintiff could occasionally handle, finger, and feel with his right and left hand, could never reach or push and pull with either hand, and could never operate foot controls. Dr. Rana stated that Plaintiff could never climb stairs or ramps; could never climb ladders or scaffolds; could not balance, stoop, kneel, crouch, or crawl; and could never tolerate unprotected heights, moving mechanical parts, or vibrations. Dr. Rana estimated that Plaintiff would be absent from work due to his impairments more than three times a month. Tr. 804-809.

## HEARING TESTIMONY

At the May 17, 2011 hearing, Plaintiff testified he normally drove independently, about twice a week, to go shopping. Tr. 543. Plaintiff stated that he had pain in his neck, low back, legs, knees, feet, and arms every day. He also testified he had problems with sleep, depression, and anxiety. Tr.

545. He testified he only slept about four hours a night, and took three or four naps a day. Tr. 554-555. Plaintiff testified he did no yard work and could do little housework (only sweeping a little and folding some clothes). Tr. 561, 563. He stated he watched television each day, had no friends, and he visited with his mother on occasion. Tr. 563. Plaintiff testified he occasionally needs help bathing. Tr. 559.

Plaintiff testified he could not work due to back and arm pain, and he drops things. Tr. 544. He said he suffered from pain in his legs, knees, and feet. Tr. 545. Plaintiff testified he sometimes felt sharp pain going down his arms and legs, and had back spasms seven or eight times a day, lasting 20 to 30 minutes. Tr. 547-550. He stated that he fell sometimes, wore a back brace every day, and has used a cane since 2006. Tr. 551.

Dr. Arthur Brovender, a board certified orthopedic surgeon, testified as an impartial ME at the May 2011 hearing. Tr. 567-575. He testified that Plaintiff's physical exams were essentially normal, and saw little or no objective evidence that would support disabling pain symptoms. Tr. 567-568. Dr. Brovender stated that Plaintiff has some disc bulging, but no radicular symptoms and no nerve impingement. Tr. 570.  Dr. Brovender also said Plaintiff had some mild degenerative changes in his lumbar spine, which was the basis of his complaints. Tr. 570-571. He added that Plaintiff's medication was consistent with moderate pain. Tr. 572.  Dr. Brovender opined that, based on the objective evidence, Plaintiff had no need for a cane, though he should be allowed one due to his subjective fear of falling. Tr. 569.  He further opined that Plaintiff could lift ten pounds frequently and twenty pounds occasionally, could sit for six to eight hours in a workday, and stand or walk up to four hours in a workday. Tr. 568. Dr. Brovender also opined that Plaintiff could not engage in certain postural movements. Tr. 568-569.

14

**DISCUSSION**

Plaintiff alleges that the ALJ: (1) erred in giving little weight to the opinions of treating physician Dr. Hurray; (2) erred in failing to give proper weight to the opinions of PA Ramirez; and (3) failed to properly evaluate his credibility. The Commissioner contends that the ALJ properly evaluated the opinions of PA Ramirez, Dr. Hurray, and Dr. Brovender, and that substantial evidence supports the ALJ's credibility determination.

A.      Treating Physician/Opinion Evidence

Plaintiff alleges that the ALJ erred in evaluating the opinion evidence. In particular, he claims that the ALJ erred in giving little weight to treating physician Dr Hurray's opinions, erred in giving more weight to the opinion of the ME (Dr. Brovender) than the opinion of his treating physician, and improperly evaluated the opinion of PA Ramirez. The Commissioner contends that the ALJ properly evaluated the opinion evidence.

In determining the weight to assign medical opinions, the adjudicator must consider: (1) the relationship between the provider and the claimant, including its length, nature, and frequency; (2) the degree to which the source presents an explanation and relevant evidence to support the opinion, particularly medical signs and laboratory findings; (3) how consistent the medical opinion is with the record as a whole; (4) whether the source is a specialist and offers an opinion related to the area of specialty; and (5) any other factors that tend to support or contradict the opinion. See 20 C.F.R. §§ 404.1527 and 416.927. The ALJ is not, however, required to expressly apply each of these factors in deciding what weight to give a medical opinion and not every factor applies in every case. See Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).

15

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527 and 416.927; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

Plaintiff alleges that the ALJ erred in discounting Dr. Hurray's opinions because Dr. Hurray's opinions were based on Plaintiff's reported ongoing low back and neck pain and spasms, intermittent exacerbations, increased falling, and MRI testing; as well as objective signs such as reduced range of motion, positive straight leg raise, abnormal gait, sensory loss in Plaintiff's lower legs, muscle spasm, muscle weakness, and impaired sleep. He argues that the ALJ mischaracterized his December

2004 MRI results as showing mild degenerative disc disease and that the ALJ erred in discounting Dr. Hurray's opinions based on the opinion of Dr. Brovender. Plaintiff also argues that Dr. Hurray's opinions are entitled to greater weight because they were consistent with PA Ramirez's opinions and Dr. Rana's opinion. The Commissioner contends that the ALJ properly discounted Dr. Hurray's opinions because they were not supported by clinical evidence and were not consistent with other substantial evidence.

The ALJ's decision to discount Dr. Hurray's opinions is supported by substantial evidence and correct under controlling law. As noted by the ALJ, Dr. Hurray's opinions are unsupported by acceptable clinical and laboratory diagnostic techniques and are inconsistent with other substantial evidence in the record. Tr. 527. The impression noted by Dr. Thomas Doud on the December 2004 lumbar spine MRI was that there was a "mild" disc protrusion at L3-4 which appeared to contact the exiting left L3 nerve root just beyond the nerve root foramen. Tr. 322. The December 2004 MRI was "essentially unremarkable" with minimal endplate degenerative signal at T5-T6 and T6-T7 and minimal posterior disc bulging at C4-C5. Tr. 324. The August 2007 cervical spine MRI indicated slight bulging at C5-6 and posterior disc protrusion at C4-5, narrowing the right lateral neural foramen.  Tr. 456. Dr. Hurray based her opinions in large part on Plaintiff's self-reported pain, his self-reported pain exacerbations, reports of falling, and the MRI evidence (which showed a mild disc protrusion). Tr. 798. Additionally, the ALJ properly discounted Dr. Hurray's opinions because they were inconsistent with the opinion of Dr. Brovender, a specialist in orthopedics. Id. The ALJ also noted that Dr. Hurray's opinions were based on Plaintiff's subjective complaints as indicated by Dr. Hurray's response on a check-the-box form. Id.  The form requested Dr. Hurray to estimate how

17

many days a month Plaintiff was likely to be absent from work as a result of his impairments or treatment.  Dr Hurray responded that her patient (Plaintiff) was unable to estimate. Tr. 801.

Plaintiff argues that the ALJ erred in relying on Dr. Brovender's opinion because Dr. Brovender's opinion was based on a significantly incomplete or inaccurate view of the medical record. In particular, he argues that Dr. Brovender stated (Tr. 571) that he did not see any positive straight leg tests in the record. However, Plaintiff's counsel noted an incident of positive straight leg raise testing and asked Dr. Brovender if this changed his opinion. Dr. Brovender did not change his opinion after this was brought to his attention. See Tr. 571-572.[2] Further, Dr. Brovender discussed the results of other objective testing. Contrary to Plaintiff's argument, there is no indication that Dr. Brovender relied exclusively on exhibits 7F and 8F. Dr. Brovender testified that he had a chance to look at all the medical information sent to him (Tr. 567) and he considered the entire record in formulating his opinion as to Plaintiff's residual functional capacity (Tr. 573). Although he cited to exhibits 7F and 8F, he said he drew from "most of the exhibits" when formulating his opinion. Tr. 573. Plaintiff also disagrees with Dr. Brovender's testimony that his gait was normal because the record contains instances where he had an antalgic gait (Tr. 276) and an abnormal gait (Tr. 777). Most examinations, however, indicated that Plaintiff had a normal gait. Tr. 265, 326, 451, 464, 486, 756, 758, 763, 765, 772, 782.

Plaintiff also alleges that the ALJ erred in improperly evaluating the opinions of PA Ramirez. He argues that the ALJ did not give logically or legally sufficient reasons for discounting PA Ramirez's opinions and failed to consider the applicable factors in evaluating those opinions.  In

---

[2]In his brief, Plaintiff notes two other positive straight leg raise tests in December 2004 (Tr. 240 and 313) and one in December 2007 (Tr. 470). Plaintiff has identified only a few positive straight leg tests in the lengthy record covering a period of more than six years.

particular, he argues the ALJ failed to consider that PA Ramirez personally treated him on a monthly basis for many years, provided three consistent opinions over a several year span, provided opinions that are consistent with the opinions of Dr. Hurray and Dr. Rana, and provided opinions that are based on objective diagnostic tests and objective physical findings. He also argues that the ALJ's reliance on Dr. Brovender's opinions and the ALJ's attack on the check-the-box forms is insufficient to discount PA Ramirez's opinions. The Commissioner contends that the ALJ properly evaluated PA Ramirez's opinions, explaining why he gave no weight to the opinions including that PA Ramirez was not an acceptable medical source and that Dr. Brovender contradicted PA Ramirez's opinions.

The ALJ's evaluation of PA Ramirez's opinions is correct under controlling law and is supported by substantial evidence. In his decision, the ALJ noted that PA Ramirez was not an acceptable medical source. As a physician's assistant, PA Ramirez is not an acceptable medical source. See SSR 06-03p. He is not a treating source whose medical opinion may be entitled to controlling weight. See 20 C.F.R. § 404.1527(a)(2). Opinions from other medical sources, however, may reflect the source's judgment about a claimant's symptoms, diagnosis and prognosis, what the individual can do despite the impairment, and physician and mental restrictions. See SSR 06-3p. The ALJ did consider PA Ramirez's opinions pursuant to this Ruling. See Tr. 526-527. The ALJ properly discounted PA Ramirez's opinions as they were inconsistent with the testimony of Dr. Brovender. See Tr. 526. The ALJ also discounted PA Ramirez's opinion because they were on check-the-box type forms which the ALJ found unduly weighed Plaintiff's symptoms and statements and were designed to emphasize Plaintiff's limitations rather than what Plaintiff could do. Tr. 527.

B.    Credibility

Plaintiff alleges that the ALJ failed to provide adequate reasons for his credibility determination. In particular, he argues that the ALJ failed to take into account the effects of his long-term medications, the consistency of his complaints of pain, MRI evidence that showed he had conditions capable of producing severe pain, and Dr. Brovender's testimony that he believed Plaintiff had pain. Plaintiff also argues that the ALJ failed to consider his work history of 22 years for the same company. The Commissioner contends that substantial evidence supports the ALJ's credibility determination including that there were many inconsistencies between Plaintiff's self-reported symptoms and the record. Additionally, the Commissioner argues that the ALJ specifically noted Plaintiff's use of medications, his long-term pain complaints, his medication side effects, and Plaintiff's work history.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d at 591-92; Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged

functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ's decision to discount Plaintiff's credibility is supported by substantial evidence and correct under controlling law. The ALJ applied the two-part test discussed above. See Tr. 524. In his decision, the ALJ found that Plaintiff was not fully credible based on the medical and non-medical evidence. The ALJ properly discounted Plaintiff's credibility because the objective medical evidence did not substantiate the degree of limitations alleged by Plaintiff. Tr. 525. The ALJ noted that June 2008 treatment notes indicated that Plaintiff had good range of motion and a normal gait; although Plaintiff had an antalgic gait and a mild balance disturbance shortly after his 2005 car accident, this later resolved; radiographs indicated only mild abnormalities; and despite his claims of disabling mental impairments, treatment notes before and after Plaintiff's 2005 confusion incident consistently indicated that Plaintiff's mental status was normal. Tr. 525-526. The ALJ also noted that Plaintiff was not recommended for surgery and never sought treatment from a mental health specialist, suggesting his impairments were not as severe as alleged. Id. Although Dr. Brovender testified that he believed Plaintiff had pain, he opined that Plaintiff had the residual functional capacity to perform a range of light work. The ALJ, however, credited Plaintiff's testimony further, limiting Plaintiff to sedentary work. Tr. 525.

Contrary to Plaintiff's argument, the ALJ did consider Plaintiff's long-term use of pain medication, his long-term pain complaints, and work history. The ALJ expressly noted that Plaintiff received epidural injections and took pain medications (Tr. 518, 525), reported various medication side effects (Tr. 524), complained of pain to medical providers (Tr. 519), and discussed his work history (Tr. 528).

Plaintiff, citing <u>Osgood v. Astrue</u>, No. 2:08-CV-03386, 2010 WL 737839 at *9 (D.S.C. March 2, 2010), argues that his good employment history entitles him to substantial credibility. The Eighth Circuit, in <u>Lanning v. Heckler</u>, 777 F.2d 1316 (8th Cir. 1985), reversed and remanded an action in which the ALJ failed to make an express credibility determination detailing why he rejected the claimant's testimony. The Eighth Circuit further noted that the record provided no explanation for the ALJ's failure to fully credit the claimant's claims where he worked two jobs for a total of over 50 hours a week for 20 years and never collected medical disability or worker's compensation until his heart and other medical problems forced him to retire. <u>Id.</u> at 1317-1318. Plaintiff has cited no cases to show that an enhanced credibility doctrine has been established in the Fourth Circuit.[3] Here, even if this doctrine is applicable in the Fourth Circuit, the ALJ noted that there is evidence of inconsistencies between Plaintiff's allegations and evidence in the record as discussed above. Additionally, although Plaintiff testified at the first hearing (July 2008) that he had ten out of ten back pain, the ALJ noted that Plaintiff was able to calmly respond to questions despite allegedly being in the worst pain one could image, to which Plaintiff inconsistently responded that "it kind of made my back hurt **a little bit** is riding here that far [sic]." Tr. 47 (emphasis added). Although Plaintiff testified that he went out on leave after his September 2004 accident, he also stated that he was going back to work, but his company laid him off and shut his plant down. Tr. 27-28. Further, Social Security Ruling 96-7p provides that a claimant's work history is only one of the many factors the ALJ must consider. SSR 96-7p. Here, the ALJ found that Plaintiff was not fully credible based on a number of factors, such that his prior work history does not necessitate further consideration.

---

[3]The Fourth Circuit, in <u>Vitek v. Finch</u>, 438 F.2d 1157 (4th Cir. 1971), noted that "[t]here can be no question about the motivation to work of a man who worked for the same employer for 37 years," but did not adopt the enhanced credibility doctrine. <u>Id.</u> at 1159.

## CONCLUSION

Based on the foregoing, it is RECOMMENDED that the Commissioner's decision be **affirmed**.

Joseph R. McCrorey
United States Magistrate Judge

January 2, 2014
Columbia, South Carolina