# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Terral Alexander, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:12-2631-RMG |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation on January 3, 2014, recommending that the Court affirm the decision of the Commissioner. (Dkt. No. 21). The Plaintiff filed objections to the Report and Recommendation and the Commissioner filed a reply. (Dkt. No. 22, 24). As more fully set forth below, the Court reverses the decision of the Commissioner and remands for further action consistent with this order.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo*

-1-

-2-

determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the applicant is engaged in substantial gainful work. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has any "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant has one

or more severe impairments, the Commissioner proceeds to Step Three, which involves a determination whether any impairment of the claimant satisfies any one of a designated list of impairments that would automatically render the claimant disabled. *Id.* § 404.1520(a)(4)(iii). Where the claimant has multiple impairments but none satisfy independently the criteria for a listed impairment, the Commissioner is obligated to consider the combined effect of the various impairments and determine whether they are the medical equivalent of the criteria of a listed impairment. 42 U.S.C. § 423(d)(2)(B); *Walker v. Bowen*, 889 F.2d 47, 49-50 (1989); 20 C.F.R. § 416.926.

If the claimant does not have a listed impairment or the medical equivalent of a listed impairment, the Commissioner must proceed to Step Four, which involves an assessment of the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv). This requires assessment of the claimant's ability "to meet the physical, mental, sensory, and other requirements of work." *Id.* § 404.1545(a)(4). In determining the claimant's RFC, the Commissioner "must first identify the individual's functional limitations or restrictions" and provide a narrative "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8P, 61 Fed. Reg. 34474, 34475, 34478 (July 2, 1996).

Once the claimant's RFC is determined, the Commissioner must assess whether the claimant can do his past relevant work. 20 C.F.R. §§ 404.1520(4)(iv), 1545(a)(5)(i). If the claimant, notwithstanding the RFC determination, can still perform his past relevant work, he is deemed not to be disabled. If the claimant cannot perform his past relevant work, the Commissioner then proceeds to Step Five to determine if there is other available "work which

exists in significant numbers either in the region where [the claimant] lives or in several regions of the country" he can perform in light of the RFC determination. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, the burden shifts to the Commissioner to "show that the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1545. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). The Commissioner "[g]enerally . . . give[s] more weight to opinions from . . . treating sources" based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Further, the Commissioner "[g]enerally . . . give[s] more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." *Id.* § 404.1527(c)(1).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of specifically identified factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record,

-4-

consistency, and whether the treating physician is a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996). Under the Treating Physician Rule, preference is generally given to the opinions of treating physicians over the opinions of non-examining chart reviewers or one time examiners. 20 C.F.R. § 404.1527(c)(1), (2).

The Commissioner has recognized that in a certain class of cases, particularly those involving complaints of chronic pain, there may not be traditional objective medical evidence to substantiate the claimant's disability claim. *Id.* § 404.1529(c)(3). The Commissioner pledges to consider "all available evidence," which may include testimony regarding the claimant's daily activities, description of her pain, precipitating factors, the effectiveness and side effects of pain medications, and measures utilized to relieve pain. *Id.* Further, the Commissioner commits to considering the full longitudinal medical record, rather than brief snapshots that may reflect short term or temporary relief, and the claimant's persistent efforts to seek out specialists or other sources to obtain relief from pain. SSR 96-7P, 61 Fed. Reg. 34483, 34487 (July 2, 1996).

**Factual Background**

This claim for disability benefits arises out of alleged injuries suffered by Plaintiff in a September 2004 automobile collision. Plaintiff complained of back and neck pain following the collision and appeared initially to improve with physical therapy. Tr. 241-42, 258, 312, 314. However, when Plaintiff attempted to return to work his pain worsened and Plaintiff underwent further diagnostic testing and treatment. A MRI of the lumbar spine, performed on December 20, 2004, revealed the presence of disc protrusion at L3-4 that the interpreting radiologist, Dr.

Thomas Doud, found "appears to contact the exiting left L3 nerve root just beyond the nerve root foramen." Tr. 322. This interpretation finding likely nerve root contact with the protruded lumbar disc was later endorsed by Plaintiff's treating pain specialist, Dr. John Martin, who diagnosed Plaintiff with lumbar radiculapathy. Tr. 270. A thoracic spine MRI was also performed and was interpreted as "unremarkable" with minimal evidence of degeneration in the lower thoracic spine. Tr. 324. Dr. Martin treated Plaintiff thereafter with several spinal injections, which provided temporary relief but the pain soon returned. Tr. 265-67, 270, 820. Plaintiff was also evaluated by an orthopaedic surgeon, David Banit, who found that the claimant had "significant levels of pain" and "difficulty with work" and diagnosed him with degenerative disc disease at L3-4. Dr. Banit concluded, however, that Plaintiff would not be benefitted by surgery. Tr. 272, 274-78.

Plaintiff continued to complain of back, neck, and arm pain, and a MRI of the cervical spine was performed on August 16, 2007, to further evaluate his condition. The MRI was interpreted by a radiologist, Dr. Bonnie Anderson, who found disc protrusion at C4-5 "contacting but not compressing the right C5 nerve root." Tr. 455. An emergency room visit in December 2007 documented Plaintiff's complaints of severe pain with the pain radiating to the claimant's right arm. The emergency room physician diagnosed cervical radiculopathy but doubted the presence of lumbar radiculopathy. Tr. 459.

Two RFC questionnaires were completed by non-treating and non-examining physicians, Dr. Carl Anderson and Dr. George Chandler. Both indicated that the record demonstrated minimal abnormalities, and Dr. Chandler opined that Plaintiff could frequently lift twenty-five pounds and occasionally lift fifty pounds and could sit at least six hours in an eight-hour day. Tr.

344-51, 400-07.

Following an administrative hearing, the Administrative Law Judge ("ALJ") issued a decision on December 4, 2008, concluding that Plaintiff retained the RFC for medium work and denying Plaintiff's application for disability benefits. Tr. 11-19. That decision was later reversed by this Court in an order dated September 29, 2010, because the ALJ had failed to set forth in his decision the weight he had given the opinions of the non-examining and non-treating physicians and "why these opinions were given the greater weight than the medical . . . providers who treated and examined Plaintiff." Tr. 656.

Thereafter, the matter was remanded to the same ALJ and additional documentary evidence was received and a new administrative hearing was conducted. The supplemented record included office notes and responses provided by Plaintiff's primary treating physician, Dr. Cathy Hurray, a family medicine physician. Tr. 778, 792, 795-801, 821. Dr. Hurray documented Plaintiff's complaints of pain, weakness in his arms and legs, history of falls, radiating pain, and abnormal findings in the December 2004 lumbar MRI ("disc appears to contact the exiting left L3 nerve root") and the August 2007 cervical MRI ("C4-5 narrowing on the right lateral neural foramen"). Tr. 778, 798-99, 821. Dr. Hurray opined that Plaintiff could not lift even ten pounds and could only sit ten to fifteen minutes at a time and no more than two hours in an eight-hour day. Tr. 795, 799-800. She further found that Plaintiff had positive straight leg raises bilaterally at forty-five degrees. Tr. 799. She ultimately diagnosed Plaintiff with degenerative disc disease of the lumbar and cervical spine and concluded that he was not capable of performing even low stress work. Tr. 778, 780, 798, 801.

Plaintiff also underwent a consulting examination conducted by Dr. Yashbir Rana, who is

board certified in occupational medicine. After reviewing the claimant's medical records, taking a history, and conducting a physical examination, he concluded that Plaintiff suffered from "chronic degenerative spinal condition to include bulging discs at C4/5 and L3/4 with protrusion into the left L3 neural foramen," which rendered him incapable of being "gainfully employed." Tr. 803.

Expert opinion testimony was also offered at the hearing by a non-treating, non-examining physician, Dr. Arthur Brovender, who participated in the hearing by telephone. Dr. Brovender stated that he had reviewed Plaintiff's medical records and indicated that he did not know the cause of the claimant's history of chronic back pain, lower extremity weakness, and history of falls. Tr. 567. He testified that Plaintiff's physical examinations "are essentially normal," had "no radicular symptoms," and "no impingement of the nerve." Tr. 567, 570. He initially testified that there was no evidence of positive straight leg raises but under cross examination conceded it was documented on at least one occasion. Tr. 570. Dr. Brovender concluded Plaintiff could sit six to eight hours per day and stand and walk four hours per day. Indeed, he could find no justification for Dr. Hurray's order of a cane "but if he feels he needs it, then let him have a cane." Tr. 569-70.

Plaintiff testified at his administrative hearing conducted on May 17, 2011, and stated that he had not worked since May 2006 because of severe pain in his back, neck, arms, and lower extremities. Tr. 544-45. When Plaintiff attempted to explain to the ALJ that his spinal disc "hit the nerves," the ALJ responded "you're not a doctor. Just tell me how you feel." Tr. 544. Plaintiff testified that he had trouble walking, could sit for only thirty minutes at a time, and could not sit four hours in an eight-hour workday. Tr. 549, 552-53. He also stated he could not

lift ten pounds because "[i]t causes me to have severe back aches, back pain." Tr. 553.

The ALJ issued a decision on the remanded case on August 16, 2011, in which he concluded that Plaintiff retained the RFC for sedentary work and was, thus, not disabled. Tr. 515-529. In reaching this conclusion, he gave "limited weight" to the opinions of Dr. Hurray, the primary treating physician, because her opinions were "inconsistent with diagnostic evidence, which reveals only mild degenerative disc disease, and . . . the testimony of Dr. Brovender, a specialist in orthopaedics." Tr. 527. The ALJ also gave "limited weight" to the opinions of Dr. Rana, the examining consulting expert, because his opinions, "like Dr. Hurray's opinion" were "inconsistent with the weight of medical evidence" including the opinions of Dr. Brovender and the state agency medical consultants. *Id.* The ALJ then went on to give "limited weight" to the opinions of state agency medical consultants Chandler and Anderson who had concluded in 2005 and 2006 that Plaintiff was capable of performing medium work. Tr. 527-28. It is from the August 16, 2011 decision that Plaintiff now appeals.

## Discussion

When the ALJ's August 2011 decision is stripped to its essence, the real question is whether the ALJ's rejection of the opinions of Plaintiff's treating physician, Dr. Hurray, and of the examining physician, Dr. Rana, in favor of the opinions of the non-treating and non-examining physician, Dr. Brovender, was proper under the Treating Physician Rule and the substantial evidence standard of review. The ALJ's conclusions and Dr. Brovender's opinions are grounded on the premise that the record lacks objective evidence of any spinal abnormalities and the treating and examining physicians have no legitimate basis for their opinions. The glaring flaw in this approach taken by Dr. Brovender and the ALJ is that the record does, in fact,

document significant spinal abnormalities that support the opinions of Dr. Hurray and Dr. Rana.

First, the lumbar MRI of December 20, 2004, documents that there is disc protrusion at L3-4 that "appears to contact the exiting left L3 nerve root just beyond the nerve root foramen." Tr. 322. This finding has been endorsed by the interpreting radiologist, the treating pain specialist, and the claimant's primary care physician. Tr. 270, 322, 821. Second, the cervical MRI performed on August 16, 2007, documented disc protrusion at C4-5 that is documented as "contacting" the nerve root. Tr. 455. Third, positive straight leg raises are documented in the record on four separate occasions, the most recent by Dr. Hurray on January 7, 2011. Tr. 240, 313, 749, 799.[1] Additionally, Plaintiff's history of multiple falls and difficulty holding objects and long and progressively worsening complaints of severe neck, back, leg, and arm pain are fully consistent with the nerve contact documented in the lumbar and cervical MRIs.[2]

On the other hand, Dr. Brovender's testimony is, at best, badly misinformed and, at worst, misleading. His statement that there is "no impingement of the nerve" is plainly contradicted by the cervical and lumbar MRI's. Tr. 322, 455, 570. His testimony that the record contained no

---

[1] An emergency room doctor documented negative straight leg raises on one occasion. Tr. 785.

[2] The Court found the ALJ's finding that he gave "little or no weight" to the information provided by Dr. Hurray on forms prepared by Plaintiff's counsel to be contrary to the Commissioner's commitment to consider all evidence and to give careful consideration to the opinions of treating physicians. Tr. 527; 20 C.F.R. §§ 404.1527(c), 1545(a)(3). Prepared forms and questionnaires are commonly part of Social Security records and provide physicians an efficient means to provide relevant information to the fact finders. The forms completed by Dr. Hurray in this matter were not simple "check the box type forms" but also included substantive statements. Tr. 795-801. She also provided office notes, including a comprehensive note following an office visit on June 17, 2011, that detailed the basis of her opinions. Tr. 821. To disregard the opinions of the claimant's primary treating physician because the ALJ does not like the form upon which she provided that information does not remotely constitute a "good reason" for rejecting that expert's opinions. SSR 96-2P.

evidence of straight leg raises is also obviously incorrect. Tr. 240, 313, 570, 749, 799. His smug dismissal of the provision of a cane for the claimant by Dr. Hurray, when the Plaintiff had experienced multiple falls, is, to say the least, unimpressive. Tr. 568-69. Further, while Dr. Brovender was technically truthful when he described himself as a board certified orthopaedist, a review of publicly reported licensing information reveals that Dr. Brovender is a retired physician who graduated from medical school in 1958 and is no longer actively engaged in providing patient care.[3]

Dr. Brovender's lack of active engagement in clinical practice has not prevented him from testifying across the country as a witness in Social Security disability cases against claimants. A search of Westlaw reveals that since 2010 there have been twenty-nine appeals to District Courts challenging Dr. Brovender's testimony in Social Security cases.[4] These cases are

---

[3] *See* Connecticut Department of Public Health Physician Licensee information, Credential Profile 1.009409, found at: www.elicense.ct.gov/SnapshotViewer.aspx?cid=539433& key=6fc0e267-1f80-4fb2; *see also Tully v. Colvin*, 943 F. Supp. 2d 1157, 1167 (E.D. Wash. 2013) (confirming Dr. Brovender is a retired physician).

[4] *Rielly v. Colvin*, No. CV-12-527-FVS, 2014 WL 29387 (E.D. Wash. Jan. 2, 2014); *Adley v. Colvin*, No. CV-12-S-4036-S, 2013 WL 5525990 (N.D. Ala. Oct. 4, 2013); *Daniels v. Astrue*, No. 11-cv-4498, 2013 WL 5553847 (E.D.N.Y. Aug. 30, 2013); *Lewis v. Colvin*, No. 12cv2072 AJB, 2013 WL 4517252 (S.D. Cal. Aug. 21, 2013); *Aguilera v. Colvin*, No. CV 12-9644-E, 2013 WL 3864212 (C.D. Cal. July 24, 2013); *Tully v. Colvin*, 943 F. Supp. 2d 1157 (E.D. Wash. 2013); *Harden v. Colvin*, No. 2:12-cv-577-VEH, 2013 WL 1346540 (N.D. Ala. Mar. 29, 2013); *Echaury v. Astrue*, No. CV 12-1245 FMO, 2013 WL 436007 (C.D. Cal. Feb. 4, 2013); *Massey-Rhodes v. Astrue*, No. CV-12-380-SP, 2012 WL 6093613 (C.D. Cal. Dec. 6, 2012); *Sullivan v. Astrue*, No. 1:11cv1833 DLB, 2012 WL 6048916 (E.D. Cal. Dec. 5, 2012); *Bunger v. Astrue*, No. 11-cv-2623, 2012 WL 4815647 (E.D.N.Y. Oct. 10, 2012); *Hailu v. Astrue*, No. CV 11-4774-VBK, 2012 WL 1535758 (C.D. Cal. Apr. 30, 2012); *Bailey v. Astrue*, No. 08-2321-KHV, 2012 WL 646008 (D. Kan. Feb. 28, 2012); *Ponce v. Astrue*, No. CV 11-2380 JPR, 2012 WL 253970 (C.D. Cal. Jan. 26, 2012); *Pena v. Astrue*, No. CV 10-5704-SP, 2011 WL 5294843 (C.D. Cal. Nov. 4, 2011); *Waters v. Astrue*, No. 5:11-CV27 MSH, 2011 WL 5153835 (M.D. Ga. Oct. 28, 2011); *Quesada v. Astue*, No. 10-cv-1139-JM, 2011 WL 4499006 (S.D. Cal. Sept. 26, 2011); *Pluck v. Astrue*, No. 10-CV-2042, 2011 WL 917654 (E.D.N.Y. Mar. 9, 2011);

from Washington, California, New York, Kansas, Connecticut, Georgia, Florida, and Alabama. According to the cases, he routinely testifies that the treating doctors have no legitimate basis for their testimony and that the claimant is not disabled. In a number of these cases, the Courts have reversed ALJ decisions which relied on Dr. Brovender's testimony noting that while he testified live, he is a non-treating, non-examining physician whose testimony must be weighed in light of the Treating Physician Rule. *Harden*, 2013 WL 1346540, at *5; *Echaury*, 2013 WL 436007, at *4; *Hailu*, 2012 WL 1535758, at *3-4; *Sullivan*, 2012 WL 6048916, at *20-21; *Ponce*, 2012 WL 253970, at * 5-8; *Pluck*, 2011 WL 917654, at *23; *Campoverde*, 2010 WL 3929060, at *3-5.

The ALJ's August 16, 2011 decision, like the earlier reversed decision in this matter, fails to document the evaluation of the competing expert opinions in accord with the standards set forth in the Treating Physician Rule. While the Commissioner pledges "to consider all of the . . . factors in deciding the weight we give any medical opinion," and to give "more weight" to examining and treating physicians, the ALJ fails to address the Treating Physician Rule factors except for a repeated reference to the fact that Dr. Brovender is an orthopaedist. 20 C.F.R. § 404.1527(c). There is no evidence that any deference was paid to Dr. Hurray's opinions because of her status as a treating and examining physician or to Dr. Rana's opinions because of his status

---

*Davenport v. Astrue*, No. CV-09-287-CI, 2011 WL 839280 (E.D. Wash. Mar. 7, 2011); *Pando v. Astrue*, No. CV 10-1965, 2011 WL 487891 (C.D. Cal. Feb. 10, 2011); *Clemons v. Astrue*, No. CV 09-8197-JEM, 2010 WL 5168945 (C.D. Cal. Dec. 14, 2010); *Parker v. Astrue*, No. CV 09-8919 CW, 2010 WL 4312974 (C.D. Cal. Oct. 26, 2010); *Campoverde v. Astrue*, No. CV 09-6231-JEM, 2010 WL 3929060 (C.D. Cal. Oct. 4, 2010); *Flores v. Astrue*, No. 3:09CV1829(JCH), 2010 WL 5129121 (D. Conn. Sept. 24, 2010); *Guzman v. Astrue*, No. CV-09-196-JPH, 2010 WL 1688685 (E.D. Wash. Apr. 23, 2010); *Anderson v. Astrue*, No. 2:08CV627-SRW, 2010 WL 1533125 (M.D. Ala. Apr. 15, 2010); *Durden v. Astrue*, No. 5:07-cv-423, 2010 WL 1257707 (M.D. Ga. Mar. 26, 2010); *Kirkirt v. Astrue*, No. 5:08-cv-501, 2010 WL 996519 (M.D. Fla. Mar. 17, 2010); *Sullivan v. Astrue*, No. CV 08-7555, 2010 WL 761288 (C.D. Cal. Mar. 2, 2010).

-12-

as an examining physician. From the ALJ's August 16, 2011 decision, this Court cannot determine whether the Treating Physician Rule factors were considered or that there is substantial evidence to support the weight accorded the opinions of each expert. Reversal and remand are necessary for the opinions of the various experts to be evaluated under proper legal standards.

The Court further finds that there is not substantial evidence in the record to support the finding of the ALJ that there is no diagnostic evidence to support the opinions of Dr. Hurray and Dr. Rana. Tr. 527. As the Court has set forth above, the abnormal findings on the lumbar and cervical MRIs, documenting disc contact with nerve roots in both the lumbar and cervical spine, provide ample objective evidence to support the clinical judgment of the treating and examining physicians that Plaintiff's spinal abnormalities impair his ability to function in the competitive marketplace. Tr. 322, 455. Further, the Court finds that Dr. Brovender's testimony that there is no evidence of nerve impingement or straight leg raises is not supported by substantial evidence, and these obvious deficiencies in his testimony, as well as his status as a road worn chart reviewer, should be carefully considered in weighing the testimony of the various expert witnesses on remand.

## Conclusion

Based on the foregoing, the Court hereby reverses the decision of the Commissioner, pursuant to 42 U.S.C. § 405(g), and remands for further action consistent with this order. In light of the protracted nature of these administrative proceedings, which now date back over eight years, the Commissioner is directed to conduct a hearing on remand and to have the ALJ issue a new decision within 180 days of this order.

-14-

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

February 4, 2014
Charleston, South Carolina